## STEVENS v. EDWARD C. LEVY COMPANY.

1. DAMAGES—REMITTITUR—INSURANCE—INTERNIST.

Trial court's order for new trial unless plaintiffs filed remittitur in consolidated actions of husband and wife for injuries to latter because she had inflamed the jury by volunteering in answer a question: "Is that the insurance doctor?" *held*, without foundation as an injection of insurance, where record discloses her question actually was "Is that the internist doctor?" and that that doctor was an internist.

2. SAME—VERDICT—PERSONAL INJURIES—IMPROPER CONDUCT.

The verdict of a jury in action for damages for personal injuries should be upheld unless it is so excessive as to shock the judicial conscience, where there is no showing of any improper conduct or language by plaintiff or her counsel which would have inflamed the jury or appealed improperly to its sympathy or caused a verdict resulting from passion, prejudice, partiality, or corruption.

3. SAME—EVIDENCE—PAIN AND SUFFERING.

A verdict in action for damages for personal injuries should not be set aside in whole or in part, where within the range of the evidence and within the limits of what reasonable minds might deem just compensation for such imponderable items as pain and suffering.

4. SAME—PERSONAL INJURIES.

There is no absolute standard by which the amount of damages in personal injury cases can be measured, and the amount allowed for pain and suffering must rest in the sound judgment of the triers of the facts.

5. SAME—PERSONAL INJURIES—EVIDENCE.

Verdict of $3,000 for plaintiff husband and $6,000 for plaintiff wife in consolidated actions arising from injuries to neck, back, and leg when defendant's truck was negligently driven against a cinder block building in which plaintiff wife was operating a restaurant *held*, well within the range of proofs as to pain, suffering, permanence of injury, disability, medical and hospital expenses, and loss of wages.

---

* Continued from Volume 375 Michigan.

REFERENCES FOR POINTS IN HEADNOTES
[1–5] 5 Am Jur 2d, Appeal and Error § 836.

Appeal from Wayne; Miller (Allan C.), J., presiding. Submitted April 4, 1965. (Calendar Nos. 17, 18; Docket Nos. 50,532, 50,533.) Decided June 7, 1965.

Declaration by Corda Stevens against Edward C. Levy Company, a Michigan corporation, for injuries sustained when a truck owned by defendant struck a building in which plaintiff was working. Derivative suit by Clifford Stevens against Edward C. Levy Company for medical expenses incurred in his wife's behalf and for loss of consortium. Suits consolidated for trial and appeal. Verdicts for plaintiffs. Order by trial judge for remittiturs or in the alternative a new trial. Plaintiffs appeal. Reversed and remanded for entry of judgments on the verdicts.

*Albert Lopatin* (*Norman L. Zemke,* of counsel), for plaintiffs.

DETHMERS, J. In these cases, consolidated for trial and appeal, plaintiff Corda Stevens sues for damages for personal injuries and her husband, plaintiff Clifford Stevens, for medical expenses incurred in her behalf and loss of consortium.

A jury returned a $6,000 verdict for the wife and a $3,000 verdict for the husband. On presentation of defendant's motions for new trial, the court filed an opinion ordering new trial unless plaintiff wife should remit $3,000 and plaintiff husband $1,000, reducing her judgment to $3,000 and his to $2,000. Plaintiffs declined to file remittiturs and appeal from such order.

Defendant's employee drove a truck against a cinder block restaurant building in which plaintiff wife was working. The building was shifted on its foundation 3 or 4 inches, blocks were cracked down one side and practically everything in the building

was moved by the force or shock of the collision. Plaintiff wife testified that her right leg hit against a mechanical dishwasher. In his opening statement at trial defense counsel conceded that defendant's driver had been negligent and stated that defendant was contesting only the question of damages.

Plaintiff wife testified that prior to the accident she had had no difficulty with her neck or right leg, but thereafter continued to suffer considerable pain in both; that the leg started bothering so badly that she couldn't stand on it; that after some absence from her job she attempted to work but was so bothered by her leg that her employer sent her to a doctor who informed her that she had a blood clot and told her to go home and stay off her leg. She was treated in a hospital outpatient department. A blood clot later developed in her chest. A ligation was performed on her leg. For 6 months after that she could not work, and frequently she was treated in the emergency department of a hospital. She was still suffering leg pains at time of trial almost 3-1/2 years after the accident. She had started a restaurant business, but lost 3 months' work from her business because of her leg and hired a substitute for $30 per week. A physician who had examined her more than 2-1/2 years after the accident testified that she was injured in the neck and back and leg from the accident; that she suffered from tenderness in the trapezius muscles in the back of the neck, decrease in her ability to flex her neck, tenderness in the right calf and minimal varicose veins. He expressed the opinion that all this was caused by the accident. The doctor also testified that she had a congenital arthritic condition of the vertebrae and that this rendered her more susceptible to trauma. Also, he testified that he considered her injuries as permanent. He was of the opinion that the accident caused a thrombosis in a vein, that a

portion of the clot later broke off and traveled to her lungs, causing a pulmonary embolism. Another doctor's testimony confirmed the above. He expressed the opinion, in testimony, that the accident had caused a traumatic phlebitis in the leg which later developed into a pulmonary embolism, that in such cases a blood clot circulating in the blood stream could get into the heart and produce coronary thrombosis and death. The evidence showed out-of-pocket expenses for doctor and hospital bills of $1,172.20 and loss of wages and money paid to employ a substitute for plaintiff wife in her restaurant totalling $1,740, or a combined total of $2,912.20.

In his opinion the trial judge stated that plaintiff wife's "injuries were slight, and that the jury became inflamed apparently as the result of the insurance issue introduced by the plaintiff herself." With respect to the latter, the court stated that it consisted of the fact that when asked on the witness stand about going to a certain doctor, she "volunteered in answer, a question: 'Is that the insurance doctor?'" The record discloses that the court did not hear her correctly. Her question actually was, "Is that the internist doctor?" The record also discloses that that doctor was an internist. The record thus strips the trial judge's opinion of any basis for the idea that the jury had been inflamed or influenced by mention of insurance.

There remaining no showing of any improper conduct or language by plaintiff or her counsel, as thought by the trial judge, which would have inflamed the jury or appealed improperly to its sympathy or caused a verdict resulting from passion, prejudice, partiality, or corruption, the verdict should be upheld unless it is so excessive as to shock the judicial conscience.

In point is the following quotation from 6 Callaghan's Michigan Pleading & Practice (2d ed),

§ 41.13, (p 397), cited with approval in *Weeks* v. *Hyatt,* 346 Mich 479, 490:

"As long as the amount awarded is within the range of the evidence, and within the limits of what reasonable minds might deem just compensation for such imponderable items as personal injuries sustained and pain and suffering, the verdict rendered should not be set aside."

We approve, also, from 9 Michigan Law & Practice, Damages, § 61, pp 62, 63:

"There is no fixed criterion for determining when an award of damages is excessive, but if an award is within the scope of the testimony, fairly represents the judgment of the jury, and does not appear to have been the result of prejudice, passion, partiality, sympathy, or corruption, it will generally be sustained, whether attacked as excessive or inadequate. However, if an award is so excessive as to shock the judicial conscience, it will be reduced.

"The permanency of an injury has a bearing on whether an award is excessive."

In *Cleven* v. *Griffin,* 298 Mich 139, this Court said:

"There is no absolute standard by which we can measure the amount of damages in personal injury cases. The amount allowed for pain and suffering must rest in the sound judgment of the triers of the facts. *Watrous* v. *Conor,* 266 Mich 397; *Weil* v. *Longyear,* 263 Mich 22. Courts are reluctant to disturb verdicts of juries for personal injuries on the ground that the amount is excessive. *Cawood* v. *Earl Paige & Co.,* 239 Mich 485. We do not usually substitute our judgment for that of the jury unless the verdict shocks the conscience or has been secured by improper means, prejudice or sympathy. *Watrous* v. *Conor, supra; Michaels* v. *Smith,* 240 Mich 671. The verdict was within the range of the testimony and not excessive."

In *Majewski* v. *Nowicki*, 364 Mich 698, we said:

"There is nothing to indicate that the verdict was reached as a result of passion, prejudice, mistake of law or of fact, or that it amounts to an injustice to defendants or is contrary to the evidence. We can only conclude that the entering of an order requiring remittitur constituted an abuse of discretion."

In the instant case testimony as to pain, suffering, permanence of injury, disability, medical and hospital expenses, and loss of wages, if accepted as true, as it evidently was by the jury, makes the verdicts well within the range of the proofs. They are not shown to be the result of prejudice, passion, partiality, sympathy, corruption or inflammatory remarks. They are not so excessive as to shock the judicial conscience. The trial court was guilty of an abuse of discretion in requiring the remittiturs.

Reversed and remanded for entry of judgments on the verdicts. Costs to plaintiffs.

T. M. KAVANAGH, C. J., and KELLY, BLACK, SOURIS, SMITH, O'HARA, and ADAMS, JJ., concurred.