LAURENTIDE LEASING COMPANY *v.* SCHOMISCH.

1. TAXATION—SALES TAX—TAX ON SELLER.

The State sales tax is a tax upon the seller and not upon the consumer (CLS 1961, § 205.52).

2. SAME—SALES TAX—INCLUSION IN PRICE—PRESUMPTIONS.

No presumption against defendant buyer of tangible personal property arises from the silence of defendant as to noninclusion of sales tax in the price before or at the time of defendant's paying the price demanded (CLS 1961, § 205.52).

3. SAME—SALES TAX—INCLUSION IN PRICE.

The general sales tax act creates no liability on the part of the purchaser of tangible personal property unless the tax is incorporated in or added to the price and the purchaser accepts it with such understanding (CLS 1961, § 205.52).

4. CONTRACTS—SALES PRICE—INCLUSION OF SALES TAX.

Contract by which buyer agreed to pay a specific sum for laundry equipment, sales tax not being mentioned, could not be changed by the seller later demanding the sales tax in addition to the purchase price, unless the buyer accepted the equipment with the understanding that buyer would pay the sales tax.

Appeal from Dickinson; Brown (Ernest W.), J. Submitted Division 3 October 6, 1967, at Marquette.

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur, Sales and Use Taxes § 22.
Redemption of trading stamps or the like for merchandise as sale at retail within taxing statute. 80 ALR2d 1221.
[2-4] 47 Am Jur, Sales and Use Taxes § 15.
Computation of sales tax where property is turned in by purchaser. 4 ALR2d 1059.
Sales or use tax: deduction or exemption of discount or premium in computing amount of sales. 90 ALR2d 338.

(Docket No. 2,671.)   Decided March 18, 1968.   Rehearing denied April 25, 1968.   Leave to appeal granted October 10, 1968.   See 381 Mich 782.

Action by Laurentide Leasing Company to recover sales tax of $1,653.85 against Daniel R. Schomisch and Richard V. Miller, purchasers of laundry equipment, and the First National Bank of Iron Mountain.   Judgment against all defendants.   Defendants appeal.   Reversed for entry of judgment of dismissal as to all defendants.

*McNeil & Payant,* for plaintiffs.

*Paul Rahm,* for defendants.

HOLBROOK, J.   Laurentide Leasing Company, plaintiff, brought an action to recover sales tax of $1,653.85 against defendants Daniel R. Schomisch and Richard V. Miller, purchasers of laundry equipment, and the First National Bank of Iron Mountain, Michigan, who transmitted the purchase money for the purchasers to plaintiff upon receipt of bill of sale.

After trial, before the court without a jury, a judgment was rendered against defendant bank upon the premise that the bank was acting as escrow agent for plaintiff and failed to comply with plaintiff's written order, and dismissed the action against defendant purchasers because they had a right to assume the sales tax was included in the price of the laundry equipment.   Subsequently, the trial judge, *sua sponte,* set aside the former judgment of dismissal and held all defendants liable for the sales tax, based on the premise that the defendant bank was the agent for the purchasers and that the "acts of the bank were binding on the two individual defendants as principals."

From the judgment for plaintiff, all defendants appeal.

Appellants raise several issues for review, which for purposes of this decision can be stated in the single question: *Did the trial court err in denying defendants' motion for a directed verdict?*

The pertinent facts appear to be as follows: Plaintiff leased certain laundry equipment to defendants Schomisch and Miller under a lease agreement, the terms of which do not appear in the record. Sometime prior to September 10, 1963, plaintiff and defendants Schomisch and Miller agreed to terminate the lease arrangement and agreed to purchase of the laundry equipment by Schomisch and Miller from plaintiff. The price agreed upon was $43,000. Schomisch and Miller arranged for financing with the First National Bank of Iron Mountain, Michigan. The plaintiff, on September 10, 1963, sent a letter to the defendant bank which reads as follows:

"September 10, 1963

"The First National Bank
"Iron Mountain, Michigan

"Re: Daniel R. Schomisch<br>and<br>"Richard V. Miller—Lease<br>1–LL–219

*"Gentlemen:*

"We hereby submit our claim and demand for $43,000 as the final payoff figure for the equipment under the referenced lease.

"We are enclosing a bill of sale from Laurentide Leasing Co. in favor of Daniel R. Schomisch and Richard V. Miller. We request that you forward funds at your earliest convenience to consummate this transaction. If required, we can assign our lease instrument to the bank as evidence of the agreement between the lessee and ourselves, which

will afford you documentary proof of the indebtedness for the interim period. We are also enclosing the canceled assignment of life insurance policy as collateral, which was furnished by the lessee to Laurentide Leasing.

"We trust that the foregoing documents will enable you to satisfy our claim, however, if you require additional documentation please contact the writer at your earliest convenience."

The proffered bill of sale was not properly witnessed or acknowledged and defendant bank on September 18, 1963, sent it back to plaintiff for proper execution. In this letter, it is stated in part as follows:

"When this has been complied with we will be in a position to remit you $43,000 to cover the final payoff on this lease."

This letter was answered by a letter from plaintiff dated September 23, 1963, to defendant bank which stated:

> "Re: Daniel R. Schomisch
> and
> "Richard V. Miller
> "Lease 1–LL–219

"The First National Bank
    "Of Iron Mountain
"Iron Mountain, Michigan
"Attn: Leo H. Mortensen
        "Executive Vice President
*"Gentlemen:*
"We are returning a duly executed and witnessed bill of sale for the laundromat equipment being conveyed to your customers Daniel R. Schomisch and Richard V. Miller, for the consideration of $43,000 net proceeds to Laurentide Leasing Company, Michigan sales tax at 4% for the account of the buyer.

"The bill of sale was executed in the presence of a notary public in and for the state of California,

county of San Francisco. We trust the receipt of this instrument will enable you to remit $43,000 to cover the final payoff on the lease.

"If you should require further documentation, please contact the writer at your earliest opportunity."

Plaintiff had sent defendant bank a telegram on September 13, 1963, as follows:

"First National Bank=
"Iron Mountain Mich=
"Ref our letter Sept 10 Schomisch-Miller payoff our lease # 219   Michigan sales tax is for the account of the buyer net proceeds to Laurentide $43,-000   Please confirm="

The defendant bank replied to this telegram with a telegram to plaintiff on September 14, 1963, which reads as follows:

"Fossum-Laurentide Leasing Co.
"405 Montgomery St SFran
"Rewire 13th Schomisch-Miller payoff $43,000.   O.K. Stop–
"Send releases and all documents to us for collection and remittance to cover will be made promptly
"The First National Bank Iron Mountain Michigan"

On October 4, 1963, defendant bank sent to plaintiff a certified check for $43,000 and requested plaintiff to acknowledge that the entire obligation had been fully satisfied.

Under date of October 8, 1963, plaintiff wrote defendant bank as follows:

"Attn: Leo H. Mortensen
"Executive Vice President
"*Gentlemen:*
"We are pleased to acknowledge receipt of your cashier check in the amount of $43,000 covering the

final payoff on the laundromat equipment leased to Daniel R. Schomisch and Richard V. Miller.

"Laurentide Leasing Company hereby acknowledges that lease 1–LL–219 is completely and fully satisfied in its entirety.

"It has been a pleasure to deal with your good bank and we trust you will have a satisfactory relationship with our former lessees."

The consideration mentioned in the first proffered bill of sale and subsequent bill of sale was stated as $43,000 with no mention whatsoever of the 4% State sales tax.

It was undisputed that Schomisch and Miller had not been informed by plaintiff or anyone else that plaintiff desired to add 4% sales tax to the $43,000 figure. Schomisch and Miller testified at the trial that the defendant bank had only specific authority from them to pay plaintiff $43,000 for a proper bill of sale conveying the laundry equipment to them. Plaintiff did not introduce any evidence to indicate that defendant bank was authorized by Schomisch and Miller to change their agreement with plaintiff in any regard. The record is barren of any evidence that Schomisch and Miller ever consented or understood that 4% sales tax was to be added to the purchase price of $43,000.

The State sales tax is a tax upon the seller and not the consumer as is evidenced in section 2 of the sales tax act* which reads in part as follows:

"There is hereby levied upon and there shall be collected from all persons engaged in the business of making sales at retail, as hereinbefore defined, an annual tax for the privilege of engaging in such business equal to 4% of the gross proceeds thereof, plus the penalty and interest when applicable as

---

* PA 1933, No 167, § 2, as amended by PA 1960 (2d Ex Sess), No 1 (CLS 1961, § 205.52 [Stat Ann 1960 Rev § 7.522]).

hereinafter provided, less deductions allowed in sections 4 and 4a."

In a somewhat similar case, *Swain Lumber Co.* v. *Newman Development Co.* (1946), 314 Mich 437, 441, Mr. Justice REID stated in part as follows:

"No presumption against defendant arises from the silence of defendant as to noninclusion of sales tax in the price before or at the time of defendant's paying the price demanded.

"The circuit judge found that the claim of mistake was not supported by the evidence. We determine that that finding is not against the weight of the evidence, and affirm the finding. The section of the statute in question (Act No 167, § 23, PA 1933 [CLS 1940, § 3663–23, Stat Ann § 7.544]) is as follows:

" 'No person engaged in the business of selling tangible personal property at retail shall advertise or hold out to the public in any manner, directly or indirectly, that the tax herein imposed is not considered as an element in the price to the consumer. Nothing contained in this act shall be deemed to prohibit any taxpayer from reimbursing himself by adding to his sale price any tax levied hereunder.'

*"The statute creates no liability on the part of the purchaser to pay the tax unless the tax is incorporated in or added to the price and the purchaser accepts the tangible personal property with such understanding."* (Emphasis supplied)

Plaintiff, under the law, included the sales tax in the $43,000 agreed price unless the sales tax was added and the purchasers accepted the personal property with such understanding. Plaintiff asserts that the 4% sales tax was not included in the price agreed but failed completely to show in any regard that the purchasers accepted the laundry equipment understanding that the sales tax was to be added to the $43,000 figure.

The defendant bank in the first instance was presented with a "claim and demand for $43,000 as the final payoff figure for the equipment under the referenced lease" from plaintiff. The subsequent statement in the telegram and letter from plaintiff to defendant bank stating that "Michigan sales tax is for the account of the buyer, net proceeds to Laurentide $43,000" constituted a change in the agreed price and to be effective under Michigan law required acceptance of the equipment by the purchasers with such understanding. This plaintiff failed to prove. It would have been simple for plaintiff to have cleared this matter directly with the purchasers or by stating in the claim and demand on defendant bank that $43,000 plus the amount of the sales tax was to be paid and transmitted to plaintiff before the bill of sale was to be delivered to the purchasers. In either case, acceptance by the purchasers or payment of the tax would have satisfied the applicable law.

The motion for directed verdict in favor of defendants should have been granted.

Reversed for entry of judgment of dismissal as to all defendants. Costs to appellants.

FITZGERALD, P. J., and BURNS, J., concurred.